**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

_____

MIKE ELDER,

     Plaintiff,

                                 Case No. 1:13-cv-00799-JCC-TRJ

_v._

DRS TECHNOLOGIES, INC.,

     Defendant.

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS (Doc 42)**

**STATEMENT OF FACTS**

This matter appears before the court as a result of defendant DRS's fraudulent timekeeping, subsequent overcharging of the United States government, and retaliatory conduct directly aimed towards relator, now plaintiff, Mike Elder. Elder was employed by DRS and was physically located in Afghanistan from 2007 until 2009. Despite being happy with his prior employer and his work in Iraq, Elder accepted a position with defendant DRS only after DRS approached Elder regarding an employment opportunity via unsolicited email. Within days of Elder's new employment with DRS, Elder observed practices that greatly troubled him. The most troubling was DRS's requirement that all employees charge 12 labor hours daily, regardless of actual time worked. DRS's retaliation towards Elder began very soon after Elder voiced concerns, both verbal and in writing, regarding DRS's timekeeping practices. Retaliation

1

continued in the form of deployments in highly combative and extremely dangerous locations within Afghanistan, as well as deployments where there was little to no work for Elder to do.

DRS takes great liberty with the operative alleged facts in its motion to dismiss and brief (Doc 43), which characterizations Elder disputes as inaccurate representations of the plaintiff's allegations.  A more detailed statement of the alleged facts is relevant to the discussion of various sections of the argument throughout this response.  Rather than burdening the court with duplicative statements of fact, the pertinent alleged facts are included in those sections.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim should not be granted unless the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007).  "A 12(b)(6) motion tests the sufficiency of a complaint and 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *W. Ref. Yorktown, Inc. v. BP Corp. N. Am. Inc.*, 618 F. Supp. 2d 513, 516 (E.D. Va. 2009) (quoting *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992)).  "Accordingly, a court should 'assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations.'" *Id.,* (quoting *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership,* 213 F.3d 175, 180 (4th Cir. 2000)).  "Although the truth of the facts alleged is assumed, and reasonable inferences are drawn in the plaintiffs favor, courts are not bound by the 'legal conclusions drawn from the facts' and 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Id.,* (quoting *Eastern Shore Markets,* 213 F.3d at 180).  "Ultimately, a complaint is sufficient if it provides the defendant sufficient notice of both what the claim is and the grounds on which the claim rests, such that the plaintiff 'raise[s] a right

to relief above the speculative level.'" *Id.,* (quoting *Bell Atlantic,* 550 U.S. at 555, 127 S.Ct. 1955).

## ARGUMENT

**I.   ELDER ADEQUATELY PLED FACTS SUFFICIENT TO SUSTAIN A § 3730(h) CLAIM**

### A.   FRCP 8 GOVERNS THE PLEADING REQUIREMENTS FOR A RETALIATION CLAIM

In reviewing the sufficiency of a retaliation claim brought under 31 U.S.C. § 3730(h), this court analyzes the claim in light of Rule 8, Fed. R. Civ. P.  *See Twigg v. Triple Canopy, Inc.*, WL 224511, *6 (E.D. Va. Jun. 2, 2010) (stating that, for retaliation claims brought under the False Claims Act, "[t]he only question for the court here is the sufficiency of Plaintiff's claims under the Rule 8 pleading standard as articulated in *Twombly* and *Iqbal*") (unpublished opinion); *Marion v. Rehabworks, Inc.*, 206 F.R.D. 643, 646 (E.D. Mo. 2001) (citing *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048 (9th Cir. 2001)).

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations.   [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

"probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted).

## B.   ELDER ADEQUATELY MET THE RULE 8 REQUIREMENTS IN THE ORIGINALLY-FILED COMPLAINT

"Claim" is defined as "the aggregate of operative facts giving rise to a right enforceable by a court." *Black's Law Dictionary* (9th ed. 2009).  For example, "the plaintiff's short, plain statement about the crash established the claim." *Id.*  "[T]he facts pled must 'allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 586 (D. Md. 2012) (quoting *Iqbal*, 566 U.S. 662, 678, 129 S.Ct. 1937 (2009) (internal citations omitted)) (omission in original).  Accordingly, the aggregate of operative facts contained in the complaint must give rise to a right enforceable by a court and allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  *See* Blacks; *Romeo* 876 F. Supp. 2d at 586.  "To properly assert a [False Claims Act] retaliation claim, a plaintiff must offer facts sufficient to show: (1) that the plaintiff engaged in protected activity under the [False Claims Act]; (2) that the employer knew of the protected activity; and (3) that the employer retaliated against the plaintiff as a result of those acts." *Twigg*, WL 2245511, *5 (citing *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 866 (4th Cir. 1999)).

"[I]n this Circuit, a court can determine whether protected activity may have occurred by looking to whether the plaintiff specifically alleged that the defendant's actions were illegal or fraudulent. *Mann v. Heckler & Koch Def., Inc.*, 639 F. Supp. 2d 619, 627 (E.D. Va. 2009), *aff'd,*

630 F.3d 338 (4th Cir. 2010). "**The Court will evaluate Plaintiff's allegations for these types of statements**. . . ." *Id.* (emphasis added). "[E]mployees engage in protected activity when they meet . . . the 'distinct possibility' standard." *Mann v. Heckler & Koch Def., Inc., v. Integrated Design Constr., Inc.*, 630 F.3d 338, 344 (4th Cir. 2010). "Under this standard, protected activity occurs when an employee's opposition to fraud takes place in a context where 'litigation is a distinct possibility, when the conduct reasonably could lead to a viable [False Claims Act] action, or when . . . litigation is a reasonable possibility.'" *Id.* (quoting *Eberhardt* 167 F.3d at 869) (omission in original). '[A]n employee may put her employer on notice of possible False Claims Act litigation by making internal reports that alert the employer to fraudulent or illegal conduct.' *Guerrero v. Total Renal Care, Inc.*, EP-11-CV-449-KC, 2012 WL 899228, 7 (W.D. Tex. Mar. 12, 2012) (unpublished opinion) (quoting *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010), and citing *Eberhardt,* 167 F.3d at 868–69 & n. 2 (stating the once an employee expresses concerns about the likelihood of fraud to an employer, the notice requirement is met)). "[T]he last element of [a False Claims Act] retaliation action is that the plaintiff-employee suffered an adverse employment action on the basis of the protected activity in which he engaged." *Weihua Huang v. Rector & Visitors of Univ. of Virginia*, 896 F. Supp. 2d 524, 552 (W.D. Va. 2012). "[T]he plaintiff must establish a causal connection between the investigation of fraud against the government and the alleged retaliatory action." *Id.* "The [False Claim Act's] legislative history requires an employee to show that 'the retaliation was motivated, at least in part, by the employee's engaging in protected activity.'" *Id.* (quoting *Glynn v. Impact Science & Technology, Inc.*, 807 F.Supp.2d, 391, 415 (D. Md. 2011)).

In this case, Elder alleges a retaliation claim in the original complaint (hereinafter "Complaint"):

¶ 15.  Relator Elder was physically located in Afghanistan from November of 2007 until he was sent home in October of 2009 and then subsequently **terminated for retaliatory reasons, in violation of subsection (h) of the Act**.  ¶ 41.  Soon thereafter, **he began to complain**, both verbally and in writing, that some of the corporate practices of DRS were wrong, and **potentially illegal**, as well as unethical.  ¶ 42.  The first such practice, and the one that unsettled Relator most, was DRS' habit of requiring all employees to charge 12 hours daily, regardless of actual time worked.  ¶ 43. **Such practice was fraudulent**, resulted in the submission of false claims to the United States Government, and resulted in funds being fraudulently and wrongfully extracted from the United States Federal Treasury.  ¶ 50.  Relator initially insisted that he work on Friday, though he would work alone with everyone else back at Camp Eggers or otherwise going shopping or out to local bars. ¶ 52.  At one point, **Relator actually began to meticulously document the systemic overcharging by DRS employees**.  ¶ 53. The document enclosed captures in detail the fraud perpetrated by DRS—employees always charging for 12 hours of work, when they actually only worked about 5 or 6 hours a day.  ¶ 54. Relator first began to speak out about the over-charging concen to Dan Roelof around the first part of December 2007.  ¶ 55.  He approached Mr. Roelof saying that he wanted to work all day, and on Fridays or be deployed into the field.  ¶ 57.  [Mr. Roelof] further added that Relator could not be deployed into the field and that he lacked experience necessary to be deployed.  ¶ 60.  **The very next week**, Relator was deployed into the field, to Eastern Afghanistan.  **This action was targeted and directed at Relator as retaliation for his whistle-blowing activities**.  ¶ 69.  **After Relator Elder repeatedly expressed his concerns about the fraud** going on at DRS, he spent the last portion of his employment mostly in the field.  ¶ 73.  Later, he was deployed to Barge Matal, a very dangerous area known for intense fighting about the Taliban.  ¶ 74.  In fact, Ricky Ruiz, the DRS supervisor at the time, even refused to give Relator a security report going into Barge

Matal a standard procedure before every mission.  ¶ 75.  Mr. Ruiz simply told Relator Elder: "you'll find out when you get there."  **The retaliatory nature of this directive was obvious and palpable to Relator**.  ¶ 96.  **That Relator be awarded all damages necessary and appropriate pursuant to subsection (h) of the Act**.

Complaint at ¶¶ 15, 41-43, 50-55, 57, 60, 69, 73-75, 96 (emphases added).

Clearly, the aggregate of the operative facts contained in the Complaint gives rise to

retaliation and allows the court to draw the reasonable inference that the defendant is liable for

retaliation.  *See id*., Black's; *Romeo* 876 F. Supp. 2d at 586.  Elder has alleged that he was

engaged in protected activity, that defendant DRS knew of the protected activity, and that he suffered retaliation motivated by the protected activity.  *See* Complaint at ¶¶ 15, 41-43, 50-55, 57, 60, 69, 73-75, 96.  Therefore, the Complaint does contain a retaliation claim.  Due to the aggregate nature of the operative facts, it should be irrelevant where within the Complaint the retaliation claim actually occurs.  *See* Black's; *Romeo* 876 F. Supp. 2d at 586.  Considering the two *Mann* decisions together, Elder's protected activity is established by analyzing the allegations for the distinct possibility that the fraudulent conduct "reasonably could lead to a viable [False Claims Act] action."  *See Mann*, 639 F. Supp. 2d at 627, *Mann* 630 F.3d at 344. Elder's allegations, taken as true, clearly establish that defendant DRS fraudulently recorded employees' labor resulting in overcharging the United States government.  *See* Complaint at ¶¶ 15, 41-43, 50-55, 57, 60, 69, 73-75, 96.  The defendant knew of the protected activity once Elder expressed concerns about the potential illegality of the time recording to the defendant.  *See Guerrero*, WL 899228 at 7.  Additionally, Elder has pleaded that his deployment to the field in Afghanistan was motivated by his complaints of fraud to his supervisor.  *See Weihua Huang*, 896 F. Supp. 2d at 552.  Thus, Elder states a claim for retaliation in the original Complaint.

Additionally, illustrative is this court's opinion in *Perry v. American Airlines, Inc.*, which held that the plaintiff's original complaint was sufficient to put the defendant on notice that the employee intended to assert a specific cause of action.  *Perry v. American Airlines, Inc.*, 405 F.Supp.2d 700, 704-05 (E.D. Va. 2005).[1]  In *Perry*, this court determined whether the original complaint met Rule 8, Fed. R. Civ. P., pleading requirements.  *Id*. at 705.

> Although Perry did not explicitly plead an FMLA claim in his original complaint, he did reference the FMLA.  Thus, paragraph 23 of the complaint states: Mr. Perry had previously invoked the Family Medical Leave Act and

---

[1]   Admittedly, *Perry* does not attempt to establish a False Claims Act retaliation claim; however, this court's discussion with respect to pleading requirements is informative to this case.

notified management that he would be spending time attending to his disabled wife. And, in subsequent paragraphs, the original complaint pleads facts that, if proven, would tend to show (i) that Perry's supervisor discouraged him from taking FMLA leave; and (ii) that Perry suffered adverse employment actions because he insisted on taking his full FMLA leave. Thus, Perry's original complaint, liberally construed, arguably references, if somewhat obliquely, the elements of an FMLA retaliation claim. To be sure, Perry's original complaint was far from a model of clarity, and his amended complaint now seeks to add numerous facts not pled in the original complaint. Yet, construing the original complaint liberally in Perry's favor, these new facts do not assert a new cause of action; rather, they simply amplify the FMLA cause of action Perry inartfully attempted to plead in his original complaint. Because Perry's original complaint (i) referenced the FMLA explicitly and (ii) pled facts that, if proven, would be sufficient to show a prima facie case of retaliation in violation of the FMLA, American was reasonably on notice that Perry was pursuing an FMLA cause of action

*Id.*

Applying *Perry* to his case, defendant DRS was reasonably on notice that Elder was pursuing a retaliation claim. Elder explicitly referenced the False Claims Act, subsection (h), and pled facts that, if proven, would be sufficient to show a prima facie case of retaliation in violation of the False Claims Act, subsection (h). *Id., see* Complaint at ¶¶ 15, 41-43, 50-55, 57, 60, 69, 73-75, 96. Accordingly, when the Complaint is construed in Elder's favor, it references the elements of a False Claims Act retaliation claim. *Id.* Moreover, unlike *Perry*, Elder did not add "numerous facts not pled in the original complaint."[2] *Id., compare* First Amended Complaint (hereinafter "FAC") at 3-12 *with* Complaint at 4-24 (omitting subsections a-uu of paragraph 68 in the Complaint). Utilizing *Perry's* logic and analysis, Elder's Complaint was sufficient to put the defendant on notice that he intended to assert a retaliation claim in violation of the False Claims Act, subsection (h). Accordingly, Elder adequately met the Rule 8, Fed. R. Civ. P., requirements as applied by this court in the Complaint.

---

2   A more complete discussion of this assertion appears, *infra*.

8

### C.    ELDER'S ORIGINAL § 3730(h) CLAIM WAS TIMELY FILED

As DRS correctly discusses in its memorandum of law in support of its motion to dismiss (Doc 43), the applicable statute of limitations is the most closely-analogous state statute of limitations to § 3730(h) claims.  *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 422 (2005).  In footnote 3, *Graham Cnty. Soil & Water Conservation Dist.* lists the most analogous state laws for each of the 50 states for purposes of the statute of limitations.  *Id*. 545 U.S. at 419 n.3.  As established by this list, both Alabama and Virginia provide a two-year statute of limitations period.  *Id.*  Therefore, regardless of which state law governs this action, the applicable statute of limitations is two years.

In this case, Elder's employment was terminated on November 9, 2009, and the Complaint was filed on June 16, 2011.  Thus, the Complaint was filed well within the two-year statute of limitations.   Accordingly, Elder's § 3730(h) claim is timely, without any need to discuss the issue of relation back.

## II.    DRS IS WRONG TO ASSERT THE FIRST AMENDED COMPLAINT IS THE FIRST TIME ELDER EVER COMPLAINED OF RETALITORY CONDUCT

Defendant DRS exclusively relies on paragraphs in Elder's First Amended Complaint ("FAC") as being the first instances of alleged retaliatory conduct.   In truth, all of these paragraphs in the FAC that Defendant cites to support this assertion, except one, are nearly verbatim to the paragraphs in the Complaint.  For example, DRS cites paragraph 56 of the FAC for the proposition that "[p]laintiff now claims the granting of his request was retaliation for his complaint about overcharging."  *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Complaint (Doc 43), at 3 (hereinafter "Motion to Dismiss").

Paragraph 56 states, "[t]he very next week, Elder was deployed into the field, to eastern Afghanistan.  This action was targeted and directed at Elder as retaliation for his whistle-blowing activities, in violation of subsection 3730(h) of the Act."  *See* FAC at ¶ 56.  Comparatively, paragraph 60 of the original complaint states, "[t]he very next week, Elder was deployed into the field, to eastern Afghanistan.  This action was targeted and directed at Elder **as retaliation for his whistle-blowing activities**."  *See* Complaint at ¶ 60 (emphasis added).  As another example, DRS states, "[p]laintiff's employment was terminated in November 2009, more than three years before he first brought a cause of action under § 3730(h)," and exclusively cites paragraph 11 of the FAC.  *See* Motion to Dismiss at 5.  Paragraph 11 of the FAC states, "Elder was employed by Defendant, DRS Technologies, Inc., from October 22, 2007, until November 9, 2009."  *See* FAC at ¶ 11.  Again, comparatively, paragraph 14 of the Complaint states, "Relator Elder was employed by Defendant, DRS technologies, Inc. from October 22, 2007 until November 9, 2009."  *See* Complaint at ¶ 14.

DRS ignores paragraph 15 of the Complaint, which explicitly states that defendant violated § 3730(h).  *See* Complaint at ¶ 15 ("Relator Elder was physically located in Afghanistan from November of 2007 until he was sent home in October of 2009 and then subsequently **terminated for retaliatory reasons, in violation of subsection (h) of the Act**.") (emphasis added).  Additionally, Paragraph 96 of the Complaint states: **That Relator be awarded all damages necessary and appropriate pursuant to subsection (h) of the Act**.  *See* Complaint at ¶ 96 (emphasis added).  Finally, defendant cites paragraphs 66 and 69 in the FAC stating that two deployments were assigned as retaliation for Relator's complaints.  *See* Motion to Dismiss at 3.  Paragraphs 66 and 69 in the FAC appear in substantially similar terms as paragraphs 70 and 73, respectively, of the Complaint.  *See* Complaint at ¶¶ 70, 73.  In fact, the only paragraph on

10

which defendant relies for the argument that Relator first alleges retaliatory conduct in the FAC is paragraph 77.  *See* Motion to Dismiss at 3.

Accordingly, defendant's argument that Elder first alleges retaliatory conduct in the FAC is demonstrably untrue.  Furthermore, comparatively, Elder's FAC is substantively similar to the Complaint.  Specifically, paragraphs 10-76 of the FAC are substantially similar, if not identical, to paragraphs 13-80 of the Complaint.  *Compare* FAC at 3-12 *with* Complaint at 4-24 (omitting subsections a-uu of paragraph 68 in the Complaint).  Contrary to defendant's argument, it is clear that Elder **first** alleges a retaliation claim in the original Complaint and not in the FAC.

## III.   ALTERNATIVELY, FRCP 15(c)(1)(B) AND THE RELATION BACK DOCTRINE PERMITS THE FAC TO RELATE BACK TO THE ORIGINAL COMPLAINT

Even if the original Complaint fails to completely state a claim for retaliation under subsection (h), it comes so close that the pleading in the FAC relates back to the date of the original complaint, for statute of limitations purposes.  Other district courts have applied Rule 15(c)(1)(B), Fed. R. Civ. P., to claims brought under the False Claims Act.  *See e.g., U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, 557 F.Supp.2d 522, 530 (M.D. Pa. 2008), *U.S. v. Omnicare, Inc.*, No. 07 C 577, WL 1059148, *7 (N.D. Ill. March 21, 2011) (memorandum opinion and order); *see also Vitullo v. Mancini*, 684 F.Supp.2d 747, 754 (E.D. Va. 2010) (explaining this circuit's application of Rule 15(c)(1)(B), Fed. R. Civ. P.).  Accordingly, Rule 15(c)(1)(B), Fed. R. Civ. P., governs the determination of whether, in this case, the FAC relates back to the Complaint.

Rule 15(c)(1)(B) allows an amendment to relate back to the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—**or attempted to be set out**—in the original pleading.  Rule 15(c)(1)(B), Fed. R. Civ. P. "To determine whether an amended pleading relates back, a court must first ascertain whether a factual nexus exists between the amendment and the original complaint."  *Marks Const. Co., Inc.*

11

*v. Huntington Nat. Bank*, 614 F. Supp. 2d 700, 712 (N.D. W.Va. 2009) (citing *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983)).  "If there is some factual nexus **an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim** and will not be prejudiced by the amendment."  *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983) *aff'd.* 468 U.S. 42, 104 S. Ct. 2924, (1984) (internal citation omitted) (emphasis added); *see also Florida Steel Corp. v. New Jersey Steel Corp.*, 966 F.2d 1442, WL 119864, (4th Cir. 1992) (unpublished opinion) ("The 'linchpin' of this provision is notice.").  "[W]here, [ ] the amendment pleads a new cause of action, the amendment is not deemed prejudicial 'if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred."  *Vitullo*, 684 F.Supp.2d at 754 (quoting *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006)).

In *U. S. ex rel. Cericola v. Fed. Nat'l Mortgage Assoc.*, the court allowed the relator to add allegations to his False Claims Act claim after the government declined to intervene and the statute of limitations had expired.  *See U.S. ex rel. Cericola v. Fed. Nat'l Mortgage Assoc.*, 529 F.Supp.2d 1139, 1150 (C.D.Cal. 2007).  "Such an interpretation is appealing; otherwise, the government could render a relator's timely filed claims time-barred by its own delay."  *U.S. ex rel. Deering v. Physiotherapy Associates, Inc.*, 601 F.Supp.2d 368, 376 (D. Mass. 2009).  "The argument is even stronger when the relator seeks to add personal claims rather than flesh out a false claims charge brought on behalf of the government. . . ."  *Id.*

In this case, even if the court determines that Elder did not adequately plead a retaliation claim in the Complaint, Rule 15(c)(1)(B) applies to allow Elder's FAC to relate back to the date of the original Complaint.  *See Vitullo*, 684 F.Supp.2d at 754.  There is a factual nexus between the counts of the FAC and the counts of the Complaint because all of the counts plead violations

12

of the False Claims Act. *See id.* (explaining that "these counts all plead FDCPA violations . . . and hence the amendments '[a]rise out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading' (quoting Rule 15(c)(1)(B), Fed. R. Civ. P.)). Applying *Vitullo* to this case, it is clear that both the counts of the Complaint and the count in the FAC arise out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading. *See id.*; c*ompare* FAC at 13-15 *with* Complaint at 24-27.   Moreover, the defendant had notice of Elder's retaliation claim. *See supra* at 6-8.  Therefore, because there is a factual nexus between the counts of the FAC and the counts of the Complaint, and because the defendant was on notice of Elder's retaliation claim, the FAC should be construed liberally to relate back to the date of the Complaint.

In its reliance on *U.S. ex rel. Deering*, the defendant glaringly overlooks a key difference between that case and this case.  In *U.S. ex rel. Deering*, the court notes that:

> The allegations pleaded in the original complaint do not suggest the possibility that the defendants could face additional claims for retaliation . . . . The original complaint contains no hint that PA took any adverse action against Deering for engaging in protected conduct–indeed, it does not even identify Deering as an employee of PA . . . .  Thus, the new claims do not arise out of the "conduct, transaction, or occurrence" underlying the FCA fraud claim.

*U.S. ex rel. Deering*, F.Supp.2d at 377 (internal citation omitted).

In contrast, not only does the Complaint identify Elder as an employee of the defendant, it also more than hints that defendant DRS took adverse action against Elder.  *See* Complaint at ¶¶ 15, 41-43, 50-55, 57, 60, 69, 73-75, 96.  Applying *U.S. ex rel. Deering* to this case, it is clear that the retaliation claim arises out of the conduct, transaction, or occurrence underlying the fraud claims of the Complaint.  *See U.S. ex rel. Deering*, F.Supp.2d at 377.  Furthermore, the Complaint explicitly references § 3730(h) and Elder pled facts that, if proven, would be

sufficient to show a prima facie case of retaliation in violation of the False Claims Act subsection (h). *See* Complaint at ¶¶ 15, 41-43, 50-55, 57, 60, 69, 73-75, 96*; see also Perry v. American Airlines, Inc.*, 405 F.Supp.2d 700, 704-05 (E.D. Va. 2005). Thus, Elder's Complaint was sufficient to put the defendant on notice that he intended to assert a retaliation claim in violation of the False Claims Act, subsection (h). *Id*. Accordingly, there should be no question that the FAC relates back to the date of the Complaint.

## IV.   ELDER ADEQUATELY ALLEGES CAUSATION AS TO DRS'S FRAUDULENT CONDUCT AND RETAILATION

Elder first urges that this fact-intensive and subjective causation question is not even a serious issue at the motion to dismiss stage. *Heckenlaible v. Virginia Peninsula Reg'l Jail Auth.*, 491 F. Supp. 2d 544, 555 (E.D. Va. 2007), cites Virginia cases for the principle "that proximate causation 'is generally a question of fact to be resolved by a jury.'" More specifically, in a retaliatory employment action based on the First Amendment, the Fourth Circuit holds that the element of causation cannot even be decided at the summary judgment stage, except in rare "instances when there are no causal facts in dispute." *Love-Lane v. Martin*, 355 F.3d 766, 776 (4th Cir. 2004); *Stronach v. Virginia State Univ.*, 631 F. Supp. 2d 743, 753 (E.D. Va. 2008). Fact questions cannot be adjudicated at the motion to dismiss stage. *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 876 F. Supp. 2d 672, 680 (E.D. Va. 2012); *U.S. for Use & Benefit of Owens v. Olympic Marine Servs., Inc.*, 827 F. Supp. 1232, 1234 (E.D. Va. 1993). Closely-analogous to causation issues, "reliance is a fact-intensive question and generally inappropriate for determination on a motion to dismiss," *Carlucci v. Han*, 907 F. Supp. 2d 709, 737 (E.D. Va. 2012), and "the question whether a defendant was actuated by malice . . . is a question of fact for a jury rather than one for the Court to determine on a Motion to Dismiss," *Harrington v. Sprint Nextel Corp.*, 1:08CV336 (JCC), 2008 WL 2228524, *6 (E.D. Va. May 29, 2008).

DRS takes great liberty with the operative alleged facts in its Motion to Dismiss, which

Elder disputes as an inaccurate representation of the case.  DRS characterizes the relevant

alleged facts, as follows:

> Plaintiff claims he was sent into the field in retaliation for his timekeeping complaint.  However, as his own allegations and the contract itself makes clear, deployment into the field was part of his ordinary day-to-day responsibilities.  In fact, Plaintiff specifically requested to be deployed into the field.
>
> . . .
>
> Plaintiff raised his timekeeping complaint in December 2007.  His employment was not terminated until November 2009.

Motion to Dismiss at 6, 7 (citations omitted).

In contrast, the facts alleged in the Complaint provide:

> Relator first began to speak out about the over-charging concern to his superior, Dan Roelof, around the first part of December 2007.  He approached Mr. Roelof saying that he wanted to work all day, and on Fridays or be deployed into the field.  Mr. Roelof told Elder that it was "no big deal, this is just the way things work."  [Roelof] further added that Relator could not be deployed into the field and that he lacked experience necessary to be deployed.  In response to the directive of Mr. Roelof, Relator (only) began to charge his time accurately, only for those hours worked (i.e. the 5 or 6 hours a day that all employees spent at the warehouse).  This prompted Roelof to confront Relator, instructing him to go back and change his recorded time, putting 12 hours for each day, instead of only hours he actually worked.  The very next week, Elder was deployed into the field, to eastern Afghanistan.  This action was targeted and directed at Relator as retaliation for his whistle-blowing activities, in violation of subsection 3730(h) of the Act.
>
> . . .
>
> After Relator repeatedly expressed his concerns about the fraud going on in DRS, he spent the last portion of his employment mostly in the field.  In 2009, DRS's Bill Howell deployed Elder to Kandahar for 3 to 4 months with no work to do.  . . . Later, he was deployed to Barge Matal, a very dangerous area known for intense fighting against the Taliban.  In fact, Ricky Ruiz, the DRS supervisor at the time, even refused to give Relator a security report

before going into Barge Matal - a standard procedure before every mission. Mr. Ruiz simply told Relator Elder: "you'll find out when you get there." The retaliatory nature of this directive was obvious and palpable to Relator. Relator Elder arrived in Barge Matal to find a raging battle between US and Coalition forces and the Taliban or Al Queda. He was told by US military forces that civilians had no business in being there (especially unarmed), but the fighting was too extreme to safely transport Elder out of the area. Fortunately, Relator Elder survived six direct and three indirect sniper shots, among a host of other gunfire and RPG rounds. Plainly, Realtor's life was in serious danger on several occasions while attending to DRS's concocted "snipe hunt." . . . Later, back in the States, Elder received official word that he was terminated from DRS, despite receiving a special commendation from a US Army officer for his bravery and efforts in Barge Matal.

Complaint at 12, 23-24, *see* FAC at 9-12 (citations omitted).

DRS mischaracterizes the alleged facts to be construed in its favor. The mischaracterization not only transforms the facts to facially support the defendant but also conveniently ignores direct evidence of causal connection alleged by Elder. *Compare* Motion to Dismiss at 6, 7 *with* Complaint at 12, 23-24. Moreover, to survive a motion to dismiss, Elder has sufficiently established a causal connection between his complaints of fraudulent timekeeping practices and DRS's retaliatory action. Thus, DRS's argument regarding lack of causal connection is unfounded.

"A plaintiff alleging retaliation faces a low hurdle at the motion to dismiss stage[.]" *Teliska v. Napolitano*, 826 F.Supp.2d 94, 100 (D.D.C. 2011) (quoting *Winston v. Clough,* 712 F.Supp.2d 1, 11 (D. D.C. 2010)). "At this early stage of the proceedings, plaintiff can meet [the] *prima facie* burden of causation simply by alleging that the adverse actions were caused by [the] protected activity." *Vance v. Chao*, 496 F.Supp.2d 182, 187 (D. D.C. 2007) (recognizing in n.4 that "[d]efendant will have an opportunity to challenge the sufficiency of plaintiff's evidence, but that moment has not yet arrived") (emphasis in original). "[A] plaintiff may raise a **presumption of causation** by showing that the **employer had knowledge** of the protected

16

activity and that the **adverse action occurred soon thereafter**." *Vance*, 496 F.Supp.2d at 186 (citing *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985)) (emphasis added). "While '[t]emporal proximity between protected expression and the alleged adverse action is relevant circumstantial evidence of causation . . . the lack of temporal proximity becomes relevant only when it is the only evidence relied upon by the Plaintiff to establish causation.'" *United States v. Lockheed Martin Corp.,* 1:09-CV-2381-TWT, 2013 WL 772810, *8 (N.D. Ga. Feb. 28, 2013) (quoting *Wiggins v. McHugh,* No. CV–109–142, 2010 WL 1640968, *3, 2010 U.S. Dist. LEXIS 39790, *9–10 (S.D. Ga. Apr. 22, 2010) (quoting *Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004))) (omission in original) (emphasis added). "**Critically, however, a plaintiff is not obligated to rely on the presumption of causation**." *Id.* "A plaintiff may also put forward direct evidence and disregard the presumption and its time limitations." *Vance*, 496 F.Supp.2d at 186 (referencing *Timmons v. U.S. Capital Police Bd.*, 407 F.Supp.2d 8, 12 (D. D.C. 2005)) (emphasis added).

In this case, Elder has met the prima facie burden of causation by simply alleging that defendant's retaliation was caused by Elder's protected activity. *See Vance*, 496 F.Supp.2d at 187. Moreover, Elder not only raises the presumption of causation but also presents direct evidence of defendant's retaliation. *See* FAC at 9-12. Establishing either form of causation is sufficient to withstand a motion to dismiss. *See Teliska*, 826 F.Supp.2d at 100, *Vance*, 496 F.Supp.2d at 187. Elder can rely solely on the presumption of causation based on temporal proximity between the protected activity and defendant's retaliation. *See Lockheed Martin Corp.*, 2010 WL 1640968, *8. For example, when Elder spoke to his superior, Dan Roelof, about his concerns regarding DRS's timekeeping practices, Elder stated that "he wanted to work all day, and on Fridays, or be deployed into the field." Complaint at ¶ 55. Roelof explained that

Elder "could not be deployed into the field because he lacked the experience necessary to be deployed." Complaint at ¶ 57. At this point, Elder began to accurately record his time which prompted confrontation by Roelof. *See* Complaint at ¶¶ 58, 59. Notwithstanding Roelof's statement that Elder was not qualified to be deployed to the field, **the very next week** Elder was deployed to eastern Afghanistan. *See* Complaint at ¶ 60. Clearly, there is an alleged temporal proximity between DRS's knowledge of the protected activity and its retaliation.[3] *See Vance*, 496 F.Supp.2d at 186. Because temporal proximity allegations exist, Elder has adequately raised a presumption of causation. *See id.*

Additionally, Elder has direct evidence of DRS's retaliation. *See* Complaint at 12, 23-24. Elder was not only repeatedly sent to the field – when, by DRS's own admission, Elder lacked experience to work in the field – but, also, Elder was deployed into active combat locations where "civilians had no business in being there."[4] *See* Complaint at 10-12. Elder was even deployed to the Kandahar region "with no work to do." *See* Complaint at 23. All of these assignments were made after Elder "repeatedly expressed his concerns about the fraud going on at DRS." *See id* at 23, 24. The repetitive nature of Elder's deployments, combined with being assigned little to no work, alleges direct evidence of DRS's retaliation. *See Vance*, 496 F.Supp.2d at 186.

---

3   It is instructive to note that all cases, except one, cited by the defendant in support of its argument that Elder has failed to establish causation were decided at the **summary judgment** stage and not a motion to dismiss. *See* Motion to Dismiss at 7. Collectively, those cases stand for the proposition that, potentially, a time lapse of 10 weeks or greater, is too remote to establish causation based on temporal proximity. *See* Motion to Dismiss at 7. Even if this line of cases applied in this matter, Elder has alleged a timeline between DRS's knowledge of the protected activity and its retaliation sufficient to allege causation based on temporal proximity. *See id.*, Complaint at 12, 23-24.
4   DRS avers in its motion to dismiss that "[t]he government, not DRS, of course, determined the locations of deployments." Motion to Dismiss at n. 7. If true, surely defendant had control over which personnel to send to the government-determined locations, ensuring that only experienced personnel were deployed.

Elder has met his prima facie burden of alleging causation, not only by alleging that the retaliation was caused by the protected activity, but also by raising the presumption of causation and by virtue of direct evidence.  *See id.* at 187.  Because the Court is deciding a motion to dismiss, and not summary judgment, Elder surpasses the necessary showing for causation.

## **CONCLUSION**

For the reasons discussed above, the Court is urged to deny defendant DRS's motion to dismiss.  Elder alleged sufficient facts to adequately plead a retaliation claim in the Complaint, so the claim is not time-barred.  Alternatively, the claim pleaded in the FAC relates back to the date of the Complaint because of the substantial similarities between the facts alleged in the Complaint and in the FAC.  Furthermore, for motion to dismiss purposes, Elder adequately alleged causation between the defendant's fraudulent activity and its retaliation against Elder.

Elder does not oppose a partial summary judgment in DRS's favor on the issue of punitive damages.  Elder withdraws his claim for punitive damages.  In all other respects, Elder urges denial of DRS's motion to dismiss.


August 12, 2013                              Respectfully submitted,




                                      _____/s/_____
                                      J. Andrew Baxter
                                      Virginia State Bar #78275
                                      Attorney for Plaintiff
                                      Law Office of J. Andrew Baxter
                                      7107 Hickory Hill Road
                                      Falls Church, VA  22042
                                      Tel. No. (202) 758-5778
                                      Fax No.  (703) 778-0369
                                      baxterlawfirm@gmail.com

_____/s/_____
Ryan P. Quinn
Virginia State Bar #73341
Attorney for Plaintiff
SLOCUMB LAW FIRM, LLC
777 6th St, NW
Suite 200
Washington, DC 20001
Tel. No. (202) 737-4141
Fax No.  (202) 589-0222
rquinn@slocumblaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of August, 2013, I electronically-filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing (NEF), and/or delivered the foregoing by First Class Mail, postage prepaid to the following counsel:

David W. O'Brien
Andy Liu (pro hac vice)
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington D.C. 20004-2595
Telephone: 202-624-32500
Facsimile: 202-628-5116
Email: dobrien@crowell.com

Gerard J. Mene
United States Attorney's Office
2100 Jamieson Ave
Alexandria, VA 22314
Telephone: 703-299-3700
Email: Gerard.Mene@usdoj.gov

_____/s/_____
J. Andrew Baxter
Virginia State Bar #78275
Attorney for Plaintiff
Law Office of J. Andrew Baxter
7107 Hickory Hill Road
Falls Church, VA  22042
Tel. No. (202) 758-5778
Fax No.  (703) 778-0369
baxterlawfirm@gmail.com
